UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RICHARD F. MAZUR,

          Plaintiff,

                                       Case Number 05-10109-BC
v.                                      Honorable David M. Lawson

ROI W. YOUNG and DYAN YOUNG,

          Defendants.

_____/

### OPINION AND ORDER GRANTING DEFENDANTS' MOTION
### FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S MOTION FOR
### SUMMARY JUDGMENT, AND DENYING MOTIONS *IN LIMINE* AS MOOT

On October 19, 2004, plaintiff Richard F. Mazur filed suit against the defendants in state court seeking to collect $298,185.41 plus interest, which the plaintiff claims is owed on a personal guaranty by the defendants to secure the payment of a land contract between the plaintiff and a third party. The defendants removed to this Court on April 14, 2005 based in diversity of citizenship. *See* 28 U.S.C. § 1332(a)(1). The parties have now filed cross motions for summary judgment. The Court heard the parties' arguments through their counsel in open court on March 16, 2006, and concludes that because the plaintiff elected to exercise his forfeiture remedy under the land contract, he has extinguished the debt owed by the principal debtor and no obligation remains under the guaranty. The claim also is barred by the statute of limitations. Therefore, the Court will deny the plaintiff's motion for summary judgment, grant the defendants' motion for summary judgment, and dismiss the case.

I.

On September 23, 1993, the plaintiff purchased residential property located at 4281 Gold Dust Point, Perrington, Michigan, which is located in Gratiot county. The plaintiff financed the

purchase with a $400,000 loan from Republic Bank secured by a mortgage in the Gold Dust property. On December 15, 1993, the plaintiff sold the property to Equitable Benefit Insurance Services, Inc. (EBIS), a corporation wholly owned by defendant Roi Young. The sale was financed by the seller (Mazur) by means of a "land contract" in which Mazur retained the title to the property and EBIS agreed to make monthly installment payments to Mazur. Mazur's mortgage to Republic Bank remained intact; it was the parties' intention that Mazur would use the monthly land contract payments to make the mortgage payments. Defendants Roi and Dyan Young lived in the house on the property.

In addition, the defendants personally guaranteed the obligations of EBIS to the plaintiff "to the same extent and with the same force and effect as though the undersigned was [sic] the primary debtor under the Land Contract." Compl., Ex. B, Personal Guaranty at ¶ A; Defs.' Resp. to Pl.'s Mot. Summ. J., Ex. 3, Personal Guaranty at ¶ A. The written guaranty set out the following "illustration":

> [T]he undersigned hereby unconditionally guarantees [sic] to Seller the full and timely payment of the rent and all other charges to be paid by Buyer pursuant to the provisions of said Land Contract, and the full and timely performance and observance of all the terms, covenants, conditions and agreements in said Land Contract provided to be performed by the Buyer; and that if Buyer shall ever be in default under any of the terms, covenants, conditions and agreements set forth in said Land Contract, the undersigned hereby promises [sic] and agrees [sic] to forthwith pay unto the Seller all rents and other charges that may be due, and shall fully satisfy, observe and perform all of the terms, covenants, conditions and agreements in said Land Contract provided to be performed by Buyer, and shall forthwith pay to Seller all damages that may occur by reason of any such default, without requiring notice or proof of demand being made.

*Id.* at ¶ B. The defendants' obligation was not contingent on notice, demand, or presentment:

> The undersigned hereby waives [sic] all requirements of notice of the acceptance of this Guaranty and action in reliance hereon, and all requirements of notice of breach

or non-performance by Buyer. The undersigned further waives any demand by Seller and of prior action by Seller of any nature whatsoever against Buyer.

*Id.* at ¶ D.

The defendants claim that the plaintiff refinanced his Republic Bank loan and mortgage with Standard Federal Bank in 1996. The refinanced amount was $350,000. The plaintiff acknowledges a loan and mortgage to Standard Federal Bank, but he denies that the loan was intended to replace the Republic Bank loan, which remained intact. The mortgage documents supports the plaintiff's position on this issue: the recital suggests the mortgage was given to secure Mazur's guaranty of Standard Federal's loan to defendant Roi Young; and it specifically states that the Standard Federal mortgage is "SUBJECT AND SUBORDINATE, HOWEVER, in each and every respect, to the rights of Republic Bank - Central, under and pursuant to a certain mortgage upon the premises." Defs.' Mot. Summ. J., Ex. 4, Mortgage.

In any event, the parties agree that EBIS defaulted on the land contract in June 1997 by failing to make installment payments and taxes. The defendants never made the payments required by the guaranty. The defendants moved out of the house shortly after the default, sometime in or after June 1997. They now reside in Florida and claim to be citizens of Montana.

On June 4, 1999, the plaintiff filed a land contract forfeiture action in Michigan's 65-1 district court against EBIS, Roi Young, and "Diane" Young. According to the court records, a "Judgment of Possession After Land Contract Forfeiture" was entered against EBIS on December 5, 2000. The judgment stated that Mazur was entitled to immediate possession, and it was approved by the attorney for EBIS. Apparently, the action remained pending against the Youngs, and on April 27, 2000 the court entered an order of dismissal for no progress.

On March 26, 2002, the plaintiff sold the property to Matthew Fisher for $436,629.  The plaintiff states that he paid all taxes, insurance, maintenance, utilities, and mortgage payments from the time of the defendants' default to the date of the sale.  There is a dispute concerning the propriety of the plaintiff's upkeep of the property and whether he caused the value to be reduced by failing to maintain it; however, that issue is not relevant to the present motions.

The defendants argue in their motion for summary judgment that the plaintiff's claim is barred by his election of remedies and the statute of limitations.  They also contend that the plaintiff's debt to Republic Bank, which was the debt covered by the guaranty, was satisfied when the loan was refinanced through Standard Federal Bank.  The plaintiff states in his motion for summary judgment that there is no fact dispute that the defendants signed the personal guaranty, EBIS defaulted on its land contract obligations, and the plaintiff is entitled to judgment as a matter of law.

## II.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c).  The parties have filed cross-motions for summary judgment, and neither suggests that there are primary facts in dispute.  Nonetheless, the Court must apply the well-recognized standards when deciding cross-motions; "[t]he fact that the parties have filed cross-motions for summary judgment does not mean, of course, that summary judgment for one side or the other is necessarily appropriate." *Parks v. LaFace Records*, 329 F.3d 437, 444 (6th Cir. 2003).  Thus, when this Court evaluates cross-motions for summary judgment, it "must evaluate

each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party." *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 506-07 (6th Cir. 2003).

Although there appears to be a factual issue undergirding the defendants' argument that the plaintiff extinguished the guaranteed debt when he "refinanced" his mortgage loan with Standard Federal Bank, the issues relating to the statute of limitations and election of remedies defenses are not subject to a material fact dispute. Summary judgment under Rule 56, therefore, is a useful method of addressing an issue when the parties agree, as here, that there are no material facts in dispute and "the sole question at issue [is] a question of law." *United States v. Donovan*, 348 F.3d 509, 511 (6th Cir. 2003); *see also Wachovia Bank v. Watters*, 431 F.3d 556, 559 (6th Cir. 2005); *Progressive Corp. and Subsidiaries v. United States*, 970 F.2d 188, 190-91 (6th Cir. 1992).

As previously mentioned, the defendants have invoked this Court's diversity jurisdiction. In federal cases based upon diversity jurisdiction, the Court must apply the law of the forum state's highest court. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938). If the state's highest court has not decided an issue, then "the federal court must ascertain the state law from 'all relevant data.'" *Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1130 (6th Cir.1995) (quoting *Bailey v. V & O Press Co.*, 770 F.2d 601, 604 (6th Cir.1985)). "Relevant data includes the state's intermediate appellate court decisions, as well as the state supreme court's relevant *dicta*, restatements of the law, law review commentaries, and the majority rule among other states." *Ososki v. St. Paul Surplus Lines*, 156 F. Supp. 2d 669, 674 (E.D. Mich. 2001) (internal quotes and citation omitted) (citing *Angelotta v. Am. Broad. Corp.*, 820 F.2d 806, 807 (6th Cir.1987)).

Michigan law governs in this case.

A.

The defendants contend that when the plaintiff chose to proceed against the land contract vendee by way of forfeiture, he elected a remedy that barred the present suit. The plaintiff counters that the defendants waived the defense of election of remedies by failing to plead it in their amended answers and affirmative defenses. He also argues that the defendants' obligations under the guaranty are separate from the obligations of EBIS under the land contract. Lastly, the plaintiff maintains that the defendants consented to the return of the property to the plaintiff, and therefore they are not released from their obligation.

With respect to the plaintiff's procedural argument, Federal Rule of Civil Procedure 8(c) requires that affirmative defenses be pleaded in an answer to a complaint. Under Michigan law, "[e]lection of remedies is an affirmative defense." *H.G. Vogel Co. v. Original Cabinet Corp.*, 252 Mich. 129, 133, 233 N.W. 200, 201 (1930). However, precisely speaking, the defendants do not claim that the plaintiff elected a remedy as to them. Rather, they argue that when the plaintiff obtained his forfeiture judgment against EBIS, he elected a remedy against that entity and thereby extinguished the debt against the principal debtor. Therefore, they insist, there is no unpaid obligation left subject to the personal guaranty. This theory, they believe, is amply covered by their second affirmative defense, which states: "Release, bar, estoppel, and waiver. Plaintiff is barred and estopped from raising the claims asserted in the lawsuit and/or has released or waived the claims asserted in this lawsuit." Pl.'s Am. Ans. and Affirm. Defs. at 4.

This language probably was insufficient to raise the defense that the plaintiff elected a remedy it had against these defendants, but it most likely was adequate to put the plaintiff on notice of the issue. As another Judge in this district explained:

> The requirement that affirmative defenses be specifically pleaded is based on notions of fair play. A party should not have to deal with an extraneous issue in a lawsuit unless it is specifically brought to his attention. At the same time, hypertechnicality in pleading requirements should be avoided. Thus, liberal pleading rules are equally applicable to the pleading of affirmative defenses. See 2A Moore's Federal Practice Par. 8.27(3). More important, what matters is not whether the magic words "affirmative defense" appears in pleadings, but whether the Court and the parties were aware of the issues involved.

*Baker v. City of Detroit*, 483 F. Supp. 919, 921 (E.D. Mich. 1979). In addition, there are exceptions to the rule requiring affirmative defenses to be pleaded. In *Overseas Motors, Inc. v. Import Motors Ltd, Inc*., 375 F. Supp. 499 (E.D. Mich. 1974), a district court held that,

> [a]n affirmative defense is not waived, even though not specifically pleaded, where it is based upon the opposing party's own proofs or pleadings, where there was no opportunity to raise it in the pleadings, or where it is tried by express or implied consent of the opposing party. The majority of cases also hold that affirmative defenses may properly be raised by motion to dismiss or for summary judgment, and that absent prejudice, leave to amend the pleadings to include an affirmative defense should be freely granted.

*Overseas Motors*, 375 F. Supp. at 512-13.

Although the defendants could have been more explicit in their pleadings, the Court is confident that the present argument properly is before the Court. Apparently, the plaintiff has been aware of this defense since mediation last November; more importantly, the plaintiff has failed to identify a way in which he is prejudiced by this defense. The Court, therefore, will proceed to the merits of the argument.

In Michigan, a land contract vendor may choose among enforcement options when payments become delinquent. He may foreclose on the contract, sell the property and apply the proceeds to the debt, and proceed against the vendee for any deficiency. *See* Mich. Comp. Laws § 600.3101 *et seq.* Or he may commence a summary proceeding in the district court to forfeit the land contract, obtain possession of the property, and retain the payments made to date. *See* Mich. Comp. Laws §

600.5744.  However, the vendor may not pursue both remedies.  The pertinent Michigan statute makes clear that summary proceedings are not exclusive of other remedies, with this notable exception:

> [A] judgment for possession after forfeiture of an executory contract for the purchase of premises shall merge and bar any claim for money payments due or in arrears under the contract at the time of trial and that a judgment for possession after forfeiture of such an executory contract which results in the issuance of a writ of restitution shall also bar any claim for money payments which would have become due under the contract subsequent to the time of issuance of the writ.

Mich. Comp. Laws § 600.5750.

The Michigan courts have explained that "a judgment for unpaid installments cannot be enforced after the forfeiture." *Orzachowski v. Kolodziejski*, 281 Mich. 657, 658, 275 N.W. 722, 722 (1937).  That prohibition has been held to apply even to delinquent taxes that the land contract vendee neglected to pay. *Michigan Nat'l Bank v. Cote*, 451 Mich. 180, 184, 546 N.W.2d 247, 249-50 (1996) (noting that "[t]he taxes are 'money payments.'  At the time of the judgment they were 'in arrears under the contract.'  Thus, a judgment for money damages to recover those amounts was barred by the forfeiture").  The Michigan courts have recognized that the rule is not absolute and a vendor may recover some forms of damages from the vendee post forfeiture, such as damages for waste or the reasonable rental value for the time the vendee retained possession of the premises after judgment. *See id.* at 185 n.3, 546 N.W.2d at 250 n.3.  However, "[i]f the plaintiff prefers to have money damages under the contract, he should be required to elect that remedy or to foreclose in the circuit court." *Id.* at 185 n.4, 546 N.W.2d at 250 n.4 (quoting 5th Annual Report, Mich. Law Rev. Comm., p. 36).

It is also clear that it is the filing of the judgment of forfeiture, not the forfeiture notice, that triggers a vendor's election.  In *Gruskin v. Fisher*, 405 Mich. 51, 273 N.W.2d 893 (1979), the

-8-

plaintiff sent notice to the defendants of his intention to seek forfeiture.  The defendants then voluntarily vacated the premises and sent the plaintiff a quit claim deed to the property.  The plaintiff refused to accept it and sought to sue for money damages.  The court held "that while the seller may not accept or take possession and still seek money damages, he may, even after sending notice of forfeiture, refuse tender of possession and either commence an action for money damages or for foreclosure of the land contract."  *Id.* at 57-58, 273 N.W.2d at 896.

In this case, there is no dispute that the plaintiff commenced a forfeiture action against EBIS and obtained a judgment for possession.  The forfeiture action by which the plaintiff obtained possession of the property extinguished the liability of EBIS under the land contract.  *See* Mich. Comp. Laws § 600.5750.  After obtaining a consent judgment of forfeiture against EBIS, the plaintiff no longer may pursue EBIS for money damages.  *Cote*, 451 Mich. at 185 n.4, 546 N.W.2d at 250 n.4.  In addition, the Land Contract between the plaintiff and EBIS limited the plaintiff's remedies.  The contract gave the plaintiff two options if EBIS defaulted:

(a)  Give the Buyer a written notice specifying the default and informing the Buyer that if the default continues for a period of fifteen (15) days after service of the notice that the Seller will, without further notice, declare the entire balance due and payable and proceed according to the common law or the statutes of the State of Michigan; **or**

(b)  Not declare the entire balance due and payable and proceed according to the common law or the statutes of the State of Michigan including, but not limited to, the right of Seller to declare a forfeiture in consequence of the nonpayment of any money required to be paid under the contract or any other breach of the Contract, but, in the event the Seller elects to proceed under the sub-paragraph, the Seller shall give the Buyer a written notice of a forfeiture specifying the default which has occurred and shall give the Buyer a period of fifteen (15) days after service of the notice of forfeiture to cure the default.

-9-

Pl.'s Mot. Summ. J., Ex. F, Land Contract at ¶ 11 (emphasis added).  The plaintiff clearly chose the second option by pursuing forfeiture in state court.  The word "or," in bold above, makes clear that both options were not available to the plaintiff.

"As a general rule, the guarantor is released from liability if some act or omission on the part of the creditor discharges the principal debtor of the principal obligation by a rule of law, even if the principal obligation has not been paid.  Thus, a guarantor is released upon the debtor's discharge from liability." 38 Am. Jur. 2d *Guaranty* § 96 (1999).  There are exceptions, however, if "[t]he guarantor . . . acquiesced in or consented to the release of the principal debtor, or if the guaranty contract expressly provides for continuing liability in the event of the release of the debtor. However, if the language of the guaranty contract did not contemplate the type of discharge of the principal debtor that occurred, the guarantor is released from liability." *Ibid.*

These general provisions are consistent with Michigan law, as illustrated by the decision in *Bank of Three Oaks v. Lakefront Properties*, 178 Mich. App. 551, 444 N.W.2d 217 (1989).  In that case, the plaintiff-bank loaned money to Lakefront Properties and took a mortgage on Lakefront's land.  The bank required the individual partners of Lakefront Properties to sign personal guaranties. When Lakefront defaulted, the bank foreclosed by advertisement.  When the redemption period expired, the bank sold the property.  The bank then sued Lakefront and the guarantors for the deficiency.  The court held that Lakefront's liability ended at the time of the foreclosure sale. "[U]pon foreclosure by advertisement and expiration of the redemption period without redemption by the mortgagor, the mortgagor cannot be held liable in a deficiency action for interest, taxes, or insurance costs accruing after the foreclosure sale." *Id.* at 557, 444 N.W.2d at 220.  The court then

-10-

held that the guarantors were not liable for the difference either, despite the broad language of the guaranty:

> We agree with the trial court that the language of the guarantee contract is quite broad and extends to any debts, obligations, and liabilities of Lakefront 'arising out of credit . . . granted by the [bank].' Logically, however, the guarantors cannot be liable for a liability which Lakefront never incurred. Because we have previously determined that Lakefront at no time became liable for post-foreclosure sale interest and expenses, neither did the guarantors.

*Id.* at 558-59, 444 N.W.2d at 221.

The same result obtains here. The guaranty contract bound the defendants to the plaintiff only "to the same extent and with the same force and effect as though the undersigned was [sic] the primary debtor under the Land Contract." Compl., Ex. B, Personal Guaranty at ¶ A; Defs.' Resp. to Pl.'s Mot. Summ. J., Ex. 3, Personal Guaranty at ¶ A. The defendants promised nothing more. The forfeiture judgment plainly extinguished EBIS's liability to the plaintiff under the land contract. The plaintiff recovered possession of the property, retained the payments made up to that time, and re-sold the property to someone else. There is no further obligation under the land cntract that is subject to the guaranty.

*Davis v. Yellow Manufacturing Acceptance Corp.*, 242 F.2d 503 (6th Cir. 1957), cited by the plaintiff, requires no different result. In that case, the plaintiff sold five trucks to a buyer for a total of $21,000, to be paid in installments. The contract gave the seller the choice of repossessing the trucks or suing for the balance due if the buyer defaulted. The defendant signed a "guaranty" of sorts in which he agreed that, if the buyer defaulted and the seller repossessed the trucks, the defendant would buy back the repossessed trucks from the seller and pay any deficiency. When the buyer defaulted, the defendant refused to buy back the trucks. The seller sold them and sued the defendant for breach of contract. The defendant argued that his contract was only a guaranty and

-11-

that repossession discharged the primary debtor and therefore his debt as well, but the Sixth Circuit found that the contract the defendant signed was "more than a mere guaranty" and that the primary debtor's release did not terminate the defendant's liability. *Id.* at 505. "An obligation which does not arise until after a third party is released from further liability can hardly be interpreted as being discharged by the third party's release." *Ibid*. The court found that the defendant's promise was "independent of and additional to his guarantee." *Ibid*.

This case is different. The defendants made no promises "independent of and additional to [their] guarantee." *Davis*, 242 F.2d at 505. There is no language in the guaranty indicating the defendants' intention to be liable for anything other than what EBIS owed. The defendants did agree to "pay such indebtedness to Seller on demand inasmuch as the undersigned hereby agrees that such indebtedness constitutes the undersigned's direct and primary obligation." Defs.' Resp. to Pl.'s Mot. Summ. J., Ex. 3, Guaranty. But "such indebtedness" refers to the defendants' guaranty of "the full and complete performance of all of the Buyer's covenants and obligations under such Land Contract." *Ibid*. At oral argument on the motion, counsel for the plaintiff pointed to language in the guaranty stating that the defendants' "obligation hereunder shall remain fully binding although Seller may have waived one or more defaults by the Buyer, extended the term of performance by the Buyer, released, returned or misapplied other collateral . . . or released Buyer from the performance of its obligations under such Land Contract." Compl., Ex. B, Personal Guaranty at ¶ D; Defs.' Resp. to Pl.'s Mot. Summ. J., Ex. 3, Personal Guaranty at ¶ D. That language does not constitute a promise independent of the guarantee; nor does it pertain to the facts of this case. The plaintiff's decision to pursue forfeiture constituted neither a waiver nor release of EBIS. Rather, it

extinguished EBIS's obligation under the land contract by operation of law, leaving no unfulfilled obligation to be guaranteed by the defendants.

Finally, the plaintiff argues that the defendants consented to the repossession of the property when their attorney signed the consent judgment, and therefore they are not released from their guaranty. This argument lacks merit because the defendants were not parties to the consent judgment in the state district court. That judgment was between the plaintiff and EBIS only. The defendants were later dismissed from the suit because no action had been taken on the case for three months. Although the defendants and EBIS may have had the same lawyer in that case, the lawyer's signing the consent judgment on behalf of EBIS does not constitute consent of the Youngs. The plaintiff has cited no authority that suggests otherwise.

### B.

The defendants also contend that the claim is barred by the applicable statute of limitations because the plaintiff's claim accrued in June 1997 when the defendants stopped making payments, and the action was not commenced until October 19, 2004. The statute of limitations for this contract claim is six years. Mich. Comp. Laws § 600.5807(8). The plaintiff responds that his claim did not accrue until March 26, 2002, when the post-forfeiture sale to third party Matthew Fisher was complete and his damages were known. He also argues that a partial payment occurred on March 26, 2002, when the proceeds from the sale of the house were applied to the defendants' debt, which restarted the limitations period. Finally, the plaintiff claims that the guaranty is a contract for continuing service, and therefore the statute of limitations does not begin to run until the conclusion of the service period.

-13-

Although plaintiff's counsel conceded at oral argument that immediately upon the failure of EBIS to make monthly payments on the land contract the plaintiff had a right to look to the guarantors for the full amount of the debt, the plaintiff insists that the breach of the guaranty did not occur until some later time, such as when the plaintiff was in a position to ascertain the full amount of his damages. But that view runs counter to the overwhelming weight of authority under Michigan law.

The Michigan legislature plainly has ordained:

Except as otherwise expressly provided, the period of limitations runs from the time the claim accrues. The claim accrues at the time provided in sections 5829 to 5838, and in cases not covered by these sections the claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results.

Mich. Comp. Laws § 600.5827. Nothing in sections 5829 through 5838 is applicable to contracts or personal guaranties.

The Michigan courts have minced no words on the subject, either. "For contract actions, the period of limitation generally begins to run on the date of the breach of the contract. . . . A plaintiff need not know of the invasion of a legal right in order for the claim to accrue." *Dewey v. Tabor*, 226 Mich. App. 189, 193, 572 N.W.2d 715, 718 (1997). "A claim of breach of contract accrues when the promissor fails to perform under the contract." *Cordova Chem. Co. v Dep't of Natural Res.*, 212 Mich. App 144, 153; 536 N.W.2d 860 (1995). There can be no question that Mazur's claim accrued when EBIS defaulted on its monthly land contract payments and the guarantors failed to cure the default. The guaranty explicitly stated that Mazur had no requirement to give "notice of breach or nonperformance by Buyer," make a demand upon the guarantors, or commence any action against EBIS in order for the guarantors' obligation to arise. Compl., Ex. B, Personal Guaranty at ¶ D; Defs.' Resp. to Pl.'s Mot. Summ. J., Ex. 3, Personal Guaranty at ¶ D. The defendants' obligation

-14-

under the guaranty arose "forthwith." *Id.* at ¶ B. "The point at which plaintiff's cause of action accrued is governed by the language of the guaranties." *United States v. Brown*, 833 F. Supp. 625, 629 (E.D. Mich. 1993). The guaranty in this case is quite clear that the cause of action accrued upon EBIS's default.

The plaintiff relies on *Jackson v. American Can Co., Inc.*, 485 F. Supp. 370 (W.D. Mich. 1980), but that case provides no support for his position. In that case, the court held that when a promissor clearly expressed an intention not to perform before the date of performance was due under the contract, the promissee could elect to sue for breach at that time or wait until the performance date. *Id.* at 374-75. There was no anticipatory repudiation by the defendants in this case. They simply failed to perform when their obligation arose upon EBIS's default. *Jackson* has no application here.

The plaintiff correctly asserts that the statute of limitations will start fresh when the obligor of a debt makes a partial payment. *See Fed. Deposit Ins. Corp. v. Ass'n Nursery Sys., Inc.*, 948 F.2d 233 (6th Cir. 1991). In *Associated Nursery*, the court recognized the general rule that "partial payments of a note by a principal debtor do[es] not toll the statute [of limitations] as to the note's guarantors." *Id.* at 237. However, the Sixth Circuit held that the partial payment in that case did restart the limitations period because the guaranty was continuing and extremely broad. Nonetheless, that case does not govern the issue here because the payment in that case was made by the principal debtor. In the present matter, EBIS is the principal debtor, not Mr. Fisher. Application of the post-forfeiture sale proceeds did not constitute a partial payment by anyone. EBIS no longer had an obligation to pay, and the sale to Fisher occurred as the result of an arm's-length transaction that Mazur had negotiated to sell the property he already had repossessed.

-15-

Application of the sale proceeds by Mazur to reduce his loss did not revive the debt by EBIS, nor did it alter the date on which his cause of action based on the guaranty accrued.

The plaintiff lastly argues that the guaranty was a contract for continuing service and therefore the statute of limitations did not begin to run until the conclusion of the service period, which the plaintiff presumably believes occurred on March 26, 2002 when the property was sold to Fisher. He cites *Hanover Insurance Co. v. Eleven and One Half Mile Drainage District*, 52 Mich. App. 658, 662, 218 N.W.2d 109, 111-12 (1974) (holding that "where the transaction was an entirety, requiring the performance of continuous service, the action was not barred until six years after the conclusion of the service"). In that case, the plaintiff was awarded a contract by the defendant to build a drainage system. The contract was based on an understanding about the subsurface conditions and stated that the contract price would be adjusted if the subsurface conditions were found to be different than expected. In March 1964, the plaintiff notified the defendants that the subsurface conditions were, in fact, different than expected, but the defendants replied that they wished to adjust the contract "at a later date in view of the possibility of construction of sanitary sewers in Martin Road by the City of St. Clair Shores." *Id.* at 660; 218 N.W.2d at 110. On July 27, 1966, the defendants refused to pay the additional costs the plaintiff incurred due to the unexpected subsurface conditions. The plaintiff sued for breach of contract on June 17, 1970. The defendants contended that the claim was time-barred because the cause of action accrued in March 1964 when the parties first discussed an adjustment. The court of appeals held that "[t]he wrong upon which plaintiff's claim is based was committed at the time of defendants' denial of the contractor's rights under" the contract on July 27, 1966. *Id.* at 662, 218 N.W.2d at 111.

-16-

*Hanover* has no application to this case because the guaranty is not a continuing service contract.  To suggest otherwise is simply an attempt to revive the discredited argument that no claim accrues at the time of a wrongful act as long as damages continue to accumulate.  The *Hanover* court reasoned that the contract to complete the construction of a drainage system in that case required the continuing services of the contractor until the project was complete, and the parties had agreed to make adjustments and settle up at the end.  The claim for breach of contract did not accrue, the court held, until the defendant refused to pay the full amount of the change orders at the end of the contract period.  The analogy to *Hanover* immediately breaks down in this case when one acknowledges the plain language of the guaranty that required the defendants "to *forthwith* pay unto the Seller all rents and other charges . . . fully satisfy, observe and perform all of the terms . . . in said Land Contract . . . and . . . *forthwith* pay to Seller all damages that may occur by reason of any such default."  Compl., Ex. B, Personal Guaranty at ¶ B; Defs.' Resp. to Pl.'s Mot. Summ. J., Ex. 3, Personal Guaranty at ¶ B (emphasis added).  There is no basis to conclude in this case that the defendants' obligation would not become fixed until some future settlement date; rather, the plaintiff's claim accrued as soon as the guaranty was breached.

The Court agrees with the defendants that the breach of the guaranty occurred when EBIS defaulted on the land contract payments in June 1997.  Because this action was commenced more than six years later, it is time barred.

### III.

The Court finds that under Michigan law, the plaintiff's actions in the state district court extinguished all obligations on the debt guaranteed by the defendants.  Therefore, no viable claim remains against defendants Roi and Dyan Young as a matter of law and they are entitled to summary

judgment.  Moreover, the plaintiff's claim is barred by the applicable statute of limitations.  *See*

Mich. Comp. Laws § 600.5807(8).

Accordingly, it is **ORDERED** that the defendants' motion for summary judgment [dkt # 28]

is **GRANTED**.

It is further **ORDERED** that the plaintiff's motion for summary judgment [dkt # 30] is

**DENIED**.

It is further **ORDERED** that the case is **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that the plaintiff's motion *in limine* [dkt # 29] and the defendants'

motion *in limine* [dkt # 39] are **DENIED as moot**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge


Dated: March 17, 2006


**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served
upon each attorney or party of record herein by electronic means or first
class U.S. mail on March 17, 2006.

s/Tracy A. Jacobs
TRACY A. JACOBS